IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Steubenville City School District** | : | Case No. 2:22-CV-2484 |
| **Board of Education** | | |
| **611 N. 4th Street** | : | Judge |
| **Steubenville, OH 43952,** | | |
| | : | |
| Plaintiff, | | |
| | : | |
| v. | | |
| | : | |
| MICHELLE K. MCGUIRE | | **COMPLAINT FOR RECOVERY** |
| 24459 Wilderness Trail | : | **OF COSTS, INCLUDING** |
| Olmsted Falls, OH 44138 | | **ATTORNEYS' FEES,** |
| | : | **PURSUANT TO THE** |
| CARLA L. LEADER | | **INDIVIDUALS WITH** |
| 8717 Tiburon Drive | : | **DISABILITIES EDUCATION** |
| Cincinnati, OH 45249 | | **ACT (IDEA)** |
| | : | |
| CATHERINE M. MICHAEL | | |
| c/o Connell Michael Kerr, LLP | : | |
| 550 Congressional Blvd., Suite 115 | | |
| Carmel, IN 46032 | : | |
| | | |
| CONNELL MICHAEL KERR, LLP | : | |
| 550 Congressional Blvd., Suite 115 | | |
| Carmel, IN 46032 | : | |
| | | |
| | : | |
| ASHLEY COOPER | | |
| 720 North 7th Street, Apt. C7 | : | |
| Steubenville, OH 43952, | | |
| | : | |
| Defendants. | : | |

## COMPLAINT

1. This is an action for costs, including attorneys' fees, incurred by Plaintiff Steubenville City School District Board of Education (the "District" or "Board") in defending an administrative proceeding under the Individuals with Disabilities Education

1

Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"), which was initiated and continued to be litigated by Defendants even though frivolous, unreasonable, and/or without foundation and/or for an improper purpose.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over this matter pursuant to IDEA's fee shifting provision, 20 U.S.C. § 1415(i)(3)(B)(i)(II) and (III), and pursuant to 28 U.S.C. § 1331.

3. Venue is proper in the Southern District of Ohio, Eastern Division because one or more of the Defendants resides in this judicial district and because a substantial part of the events or omissions giving rise to the Board's claim occurred within this judicial district.

## PARTIES

4. The Board is a political subdivision capable of suing and being sued under Ohio law. The Board is a local educational agency ("LEA") under IDEA.

5. Defendant Michelle K. McGuire is an attorney licensed to practice in the State of Ohio, who represented Defendant Ashley Cooper and J.C., who is a minor child currently residing within the Steubenville City School District and who has been identified as a student eligible to receive special education and related services, in an administrative special education due process proceeding conducted pursuant to IDEA.

6. Defendant Carla L. Leader is an attorney licensed to practice in the State of Ohio, who also represented Defendant Cooper and J.C. in an administrative special education due process proceeding conducted pursuant to IDEA.

7. Defendant Catherine M. Michael is an attorney licensed to practice in the State of Indiana. On March 21, 2022, Defendant Michael's Motion for Permission to Appear Pro Hac Vice in the administrative due process proceeding was granted. Defendant Michael

2

then represented Defendant Cooper and J.C. in the administrative special education due process proceeding conducted pursuant to IDEA.

8. Defendant Connell Michael Kerr, LLP ("CMK") is a law firm located at 550 Congressional Blvd., Suite 115, Carmel, IN 46032. Defendant Michael is the Co-Managing Partner of CMK. Defendants McGuire and Leader are Of Counsel with CMK.

9. Defendant Ashley Cooper ("Parent") resides at 720 North 7th Street, Apt. C7, in Steubenville, Ohio, which is located within the Steubenville City School District. She is the mother and natural guardian of J.C.

## APPLICABLE LAW

10. The IDEA, 20 U.S.C. § 1415(i)(3)(B)(i)(II), provides that a Court, in its discretion, may award reasonable attorneys' fees as part of costs to a prevailing party who is an LEA against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation.

11. The IDEA, 20 U.S.C. § 1415(i)(3)(B)(i)(II), further provides that a Court, in its discretion, may award reasonable attorneys' fees as part of costs to a prevailing party who is an LEA against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation.

12. The IDEA, 20 U.S.C. § 1415(i)(3)(B)(i)(III), further provides that a Court, in its discretion, may award reasonable attorneys' fees as part of costs to a prevailing party who is an LEA against the attorney of a parent, or against a parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

**FACTUAL ALLEGATIONS**

13. J.C., whose date of birth is September 7, 2010, is a child with a disability who has been diagnosed with Autism, among other conditions. He is eligible for special education and related services under the IDEA.

14. Beginning in or around April 2018, J.C. enrolled in the Edison Local School District ("Edison").

15. During the 2018-19 and 2019-20 school years, while remaining enrolled at Edison, J.C. attended School of Bright Promise, which is a separate school operated by the Jefferson County Board of Developmental Disabilities ("JCBDD").

16. J.C.'s annual Individualized Education Program ("IEP"), dated April 3, 2020, described his Least Restrictive Environment ("LRE") as a separate facility.

17. The Ohio Department of Education operates the Education Management Information System ("EMIS") to collect data on a statewide basis for Ohio's primary and secondary education, including special education information. The information school districts input into EMIS is important because it helps to determine the district's level of funding.

18. Edison coded J.C.'s LRE on the April 3, 2020 IEP as IE16, which is a public separate facility (i.e., School of Bright Promise).

19. J.C. began residing at a facility in Akron, Ohio called 2nd Home through the efforts of JCBDD in or around July 2020 because J.C.'s family was experiencing difficulty caring for him at home, particularly after the COVID-19 school shut-down that began in March 2020.

20. This residential placement was not requested or sought by Edison, and the placement was not made for educational purposes.

21. 2nd Home is located approximately one and half hours away from Edison. Thus, J.C. was unable to continue attending School of Bright Promise during the 2020-21 school year. In the Fall of 2020, J.C. purportedly began receiving his education at a facility in Akron, Ohio called Out of the Box ("OOTB"), which was run by Dr. Elizabeth Grafious. J.C. was transported between 2nd Home to OOTB for his educational services.

22. In the Fall of 2020, Edison amended the LRE statement in J.C.'s IEP to note, "[J.C.] will be placed in a residential facility, Out of the Box." This was not intended to be a residential placement as that term is used to describe an LRE. Indeed, J.C. was not residing at OOTB at that time and OOTB is not a residential facility. Further, Edison did not change the EMIS code to IE18 or IE19, which are public residential facility and private residential facility, respectively. Rather, it was changed to IE17, which is a separate private school.

23. In the Spring of 2021, Edison agreed to waive J.C.'s triennial re-evaluation under IDEA based on a review of IEP progress reports and grade cards from OOTB as well as statewide and district assessments and other education records.

24. On or about April 1, 2021, Edison prepared J.C.'s annual IEP, which repeated J.C.'s "placement in the residential facility OOTB." This again was not intended to be a residential placement as that term is used to describe an LRE. Indeed, J.C. was not residing at OOTB at that time, OOTB is not a residential facility, and Edison again coded J.C.'s LRE on the April 1, 2021 IEP as IE17, which is a separate private school, not a residential placement.

5

25. On or about May 1, 2021, J.C. became the first and only student to begin living at OOTB in addition to purportedly receiving his education there.

26. This change in where J.C. was living was not requested or sought by Edison, and the change was not made for educational purposes. Indeed, the change was not even communicated to Edison.

27. Neither Edison nor any other school district ever determined that J.C.'s LRE was residential. Rather, Edison always intended J.C.'s LRE to be a separate facility.

28. In or around June 2021, Parent moved into the Steubenville City School District. Around that time, Sarah Elliott, the District's Director of Special Education, learned from her counterpart at Edison that J.C. resided at 2nd Home and received his education at OOTB.

29. On or about September 13, 2021, Parent, through an intermediary at JCBDD, provided a completed enrollment packet with proof of Parent's residence within the District to the District.

30. The District then immediately requested J.C.'s records from Edison.

31. In response to the request, Edison provided the District with very limited information that included an IEP, an Evaluation Team Report ("ETR") from 2018 and a form indicating that Edison had waived a triennial reevaluation of J.C. in March 2021. Edison did not provide any data such as progress reporting or attendance records.

32. Based upon a review of the IEP that Edison had provided, and communications with Edison, the District correctly understood J.C.'s LRE was *not* residential; rather, that the LRE was a separate facility.

33. On September 16, 2021 the District proposed to adopt Edison's waiver of the reevaluation because the District anticipated receiving additional documentation regarding J.C.'s education.

34. By that time, the District had received a service agreement from OOTB. The service agreement did not detail the programming that would be provided to J.C., nor did it describe any services he would receive or identify who would be providing any services. The contract price was $120,000 for nine months, which was almost double what OOTB had charged Edison for the prior year for twelve months of service. In addition, the OOTB agreement presented to the District called for an additional $18,000 to be paid for transportation, even though J.C. was both living and going to school at the same place.

35. Sarah Elliott, the District's Director of Special Education, and Angelita Forte, a parent mentor with the District, visited OOTB at 11:00 a.m. on or about September 30, 2021. They were able to briefly see J.C., who looked as if he had just woken up. He was not wearing socks or shoes and his hair was disheveled. Ms. Elliott and Ms. Forte requested information about the staff members who were working with J.C., including their level of education and whether they held any certifications. They received conflicting information from OOTB staff at the meeting, with Dr. Grafious ultimately telling Ms. Elliott and Ms. Forte to look up that information themselves. Dr. Grafious abruptly ended the meeting without providing Ms. Elliott and Ms. Forte with a tour of the facility so that they could see J.C.'s educational environment. Ms. Elliott and Ms. Forte were given a few pieces of paper to take with them.

36. On October 11, 2021, OOTB advised the District that the contract price was going up from $120,000 to $140,000. When the District again requested information about who

7

would be serving as J.C.'s teachers and paraprofessional, OOTB stated that information would be provided only after the District signed the contract. During that conversation and by e-mails sent the following day and again on October 25, 2021, the District requested J.C.'s progress reports, evaluations, information about staff members, and J.C.'s schedule. Neither Parent nor OOTB provided this information. OOTB also never permitted District Superintendent Melinda Young to tour the facility despite her multiple requests to do so.

37. The inability to obtain information from OOTB was a hindrance to the District's ability to serve J.C. Without information as to how J.C. had progressed during the 2020-21 school year at OOTB, without the ability to tour the educational environment at OOTB, and without the information that the District needed about J.C., it was difficult to determine what changes would be necessary to J.C.'s IEP.

38. In mid-October 2021, Parent agreed to enroll J.C. in Akron City Schools, which was possible because that is the school district in which OOTB is located, so that Akron City Schools could educate J.C. while he lived at OOTB. Parent was scheduled to meet with Ms. Forte to complete the online enrollment packet, but she canceled the meeting. Parent then failed to return Ms. Forte's follow-up calls. This was around the time Parent retained counsel.

39. On October 28, 2021, counsel for the District wrote to Defendant McGuire via e-mail outlining the District's concerns regarding OOTB and explaining why the District had not signed the service agreement with OOTB. Specifically, counsel for the District noted in the e-mail that J.C.'s placement at OOTB was done unilaterally by the Parent. Counsel for the District also noted that the District had not received any educational records for J.C.

8

for the 2020-21 school year and that the District had little success in communicating with Parent.

40. On November 2, 2021, counsel for the District again wrote to Defendant McGuire via e-mail. In this correspondence, counsel for the District advised that the District wanted to revise J.C.'s IEP, but that there had been no cooperation from OOTB. Counsel for the District again explained why the District had not signed the OOTB contract.

41. The District held an IEP team meeting on November 10, 2021. Neither Parent nor her attorneys attended.

42. By November 18, 2021, Parent refused to accept certified mail communication from the District. The District began sliding communications under Parent's door in addition to sending them by regular U.S. mail.

43. In late November or early December 2021, Dr. Grafious of OOTB gave Defendant McGuire the information the District had been requesting. Defendant McGuire did not immediately share it with the District.

44. By late November 2021, Defendant McGuire also had J.C.'s records from Edison and did not share them with the District.

45. On or about November 22, 2021, counsel for the District advised Defendant McGuire that the District wanted to visit OOTB to see J.C. and discuss, in person, with OOTB staff, the best path forward for J.C. The week of November 29, 2021 was offered for this visit. This District's need to visit OOTB was reiterated to Defendant McGuire but neither she nor any other Defendant ever arranged for the District to visit OOTB.

46. By early December 2021, while neither Parent nor her attorneys were willing to share necessary information about J.C. with the District, the District continued to request

9

data related to J.C.'s present levels of performance and raised consideration of a re-evaluation.

47. On or about December 2, 2021, Defendant McGuire admitted that Defendants' request for a residential placement was based more on Parent's needs and not what is required for J.C. Defendant McGuire also agreed to provide the certification and licensure of all staff members who would be providing educational services to J.C. at OOTB, as well as a breakdown of the OOTB charges. This information was not provided.

48. Instead of engaging in a dialogue about a re-evaluation or providing the promised information, on December 6, 2022, Defendant McGuire produced to counsel for the District a few other records. Specifically, speech and behavior evaluations that had been completed for J.C. in June 2021 at a facility called KidsLink were provided, along with an assessment that was completed in September 2021, the results of state testing in Language Arts and Math that had been done in March 2021, an educational quarterly report for 2020/2021, a first quarter report, and charts purporting to summarize behavioral data from August 13, 2021 to September 13, 2021. The data did not align to the data the District had previously received.

49. Parent was aware of the June 2021 KidsLink evaluations in the summer of 2021 and never disclosed them to the District. Upon information and belief, Defendants McGuire and Leader became aware of the June 2021 KidsLink evaluations long before December 2021 but did not promptly disclose or provide them to the District.

50. Counsel for the District immediately requested signed authorizations allowing the District to obtain J.C.'s records directly from OOTB and KidsLink.

51. The parties had planned to mediate on December 9, 2021, but on December 7, 2021, Defendant McGuire canceled the mediation.

52. On December 17, 2021, when the District still had not been provided with pertinent information about J.C., the District formally proposed to re-evaluate J.C. in order to gather information that would assist the parties in determining his educational needs.

53. Instead of consenting to a re-evaluation, on December 20, 2021, Defendants McGuire and Leader signed a due process complaint (the "Complaint") on behalf of Parent and J.C. The Complaint falsely states School of Bright Promise was no longer able to meet J.C.'s needs during the 2019-20 school and that a more intensive program was sought.

54. The Complaint falsely states that Edison had determined J.C.'s LRE to be residential.

55. The Complaint falsely states the District sought to change J.C.'s LRE from being a residential placement.

56. The Complaint states, "The major issue for hearing is whether [the District] failed to provide FAPE by refusing to consider student's least restrictive environment, not crafting an appropriate IEP that meets all legally mandated requirements, resulting in a denial of FAPE, significantly impeding the student's and the Parent's opportunity to participate in the decision-making process and/or causing a deprivation of educational benefits."

57. The Ohio Department of Education ("ODE") appointed Todd A. Mazzola, Esq. to serve as the Impartial Hearing Officer ("IHO").

58. On January 3, 2022, counsel for the District again asked Defendants McGuire and Leader to have Parent sign authorizations allowing the District to obtain records from J.C.'s

11

medical providers and the educational institutions he had previously attended, including OOTB and KidsLink.

59. A resolution meeting was held on January 4, 2022.  It was attended by Parent and Defendants McGuire and Leader.  At the resolution meeting, counsel for the District again requested signed authorizations so that the District could obtain an accurate and true picture of J.C.'s needs.

60. At the January 4, 2022 resolution meeting, the District also again stated it wanted to conduct a re-evaluation.  The District explained it had no history with J.C.

61. On January 7, 2022, the District again formally proposed conducting a re-evaluation and invited Parent to an evaluation planning meeting on January 11, 2022.

62. Also on January 7, 2022, the District again requested that the authorizations that had been sent previously be signed.

63. On January 10, 2022, Defendant McGuire stated Parent did not agree to an evaluation and that there would be no planning meeting.  Defendant McGuire also stated Parent would not be signing authorizations.

64. On January 21, 2022, counsel for the District advised Defendants McGuire and Leader that the District intended to utilize the consent override procedures outlined in the IDEA (i.e., filing a due process complaint) in order to conduct a re-evaluation.

65. On January 24, 2022, because Defendants failed to provide signed authorizations, the District asked the IHO to execute Subpoenas allowing the District to obtain records from J.C.'s medical providers and from educational institutions that had served him in the past, including OOTB and KidsLink.  Defendants moved to quash every single Subpoena. Defendants then attempted to prevent the District from fully briefing the Motion to Quash

by moving to strike attachments to the District's opposition brief. The IHO issued various Subpoenas.

66. In response to a Subpoena, KidsLink provided two new reports of evaluations that had been done in February 2022, unbeknownst to the District, and despite Defendants' refusal to consent to an evaluation being conducted by the District. Upon information and belief, Parent and Defendants McGuire, Leader, and Michael were aware of the February 2022 KidsLink evaluations and failed to disclose them to the District.

67. OOTB produced thousands of pages of documents in response to a Subpoena. Upon information and belief, these documents were provided to and/or were available to Defendants without this or any other Subpoena.

68. On January 27, 2022, counsel for the District sent an e-mail to Defendants McGuire and Leader attempting to schedule a resolution meeting prior to the District filing a due process complaint on the re-evaluation issue. Defendants declined to attend.

69. On February 28, 2022, the District filed a due process complaint in an attempt to obtain an order requiring a re-evaluation.

70. The District asked Parent to sign an authorization allowing it to share information with Education Alternatives ("EA"), a program the District was considering for J.C.'s educational placement. Defendants never returned the signed authorization and then objected to the District calling witnesses from EA to testify at the hearing on Parent's Complaint because the EA representatives had never been involved with J.C. and because they had not reviewed any of J.C.'s records.

71. On March 15, 2022, one week before the hearing on Parent's Complaint began, Defendants produced an expert report and new data.

72. The IHO presided over a seven-day hearing on the Parent's Complaint on March 28-31, 2022 and April 1, 4, and 5, 2022.

73. The primary issue at the hearing was J.C.'s LRE.

74. Defendants aggressively sought a determination that J.C.'s LRE is residential and not a separate public or private school, while the District's position was that something less restrictive than residential placement was appropriate.

75. Out of approximately 20 witnesses who testified at the hearing, not a single one testified J.C.'s LRE had ever been declared by an educational institution to be residential before Parent moved into the District.

76. To the contrary, Edison Superintendent Bill Beattie testified Edison never looked for a residential placement as J.C.'s LRE.

77. Even Dr. Grafious testified at the hearing that she never expected that J.C. would live at OOTB and that there had never been a plan for such prior to J.C. coming to live there on or about May 1, 2021 following an incident at 2nd Home.

78. Despite the testimony at the hearing, Defendants continued to represent that J.C.'s prior IEP required a residential placement in their post-hearing brief.

79. At the hearing, Dr. Grafious testified she was trying to find a neurologist to see J.C. and that she would like to get J.C. into a Rotary camp in her area for the summer of 2022, implying she intended to continue to work with J.C.

80. However, at the time Dr. Grafious testified, a dispute between Dr. Grafious and JCBDD was brewing regarding payment that could end J.C.'s time at OOTB, both in terms of his residence and his education.

14

81. Plaintiff was not aware of the issue between Dr. Grafious and JCBDD at the time Dr. Grafious testified at the hearing.

82. Upon belief, Defendants were aware of the dispute between Dr. Grafious and JCBDD at the time Dr. Grafious testified at the hearing and concealed this information from Plaintiff and the IHO in a bid to obtain an order that the District was responsible for paying for a residential placement that Defendants hoped would be OOTB.

83. Within days of Dr. Grafious's hearing testimony, she dropped J.C. off at Parent's house in Steubenville. Only then did Parent finally consent to a re-evaluation.

84. Once he was returned to Steubenville, J.C. initially attended School of Bright Promise. With Parent's consent, he then began attending a school within and operated by the District. J.C. remains in this placement, where he has made progress, by Parent's own admission.

85. Parent has since stated the behavior data put forth by Defendants at the due process hearing was probably made up.

86. On May 15, 2022, the IHO issued a Final Decision and Order in which he found in favor of the Board on the primary issue at the hearing. Specifically, the IHO determined J.C.'s LRE was not a residential placement; rather, it was a separate public or private school.

87. The IHO also found the Board did not violate the law in terms of its child find obligations and in terms of predetermination of J.C.'s IEP or placement decision.

88. The IHO also ordered J.C. be re-evaluated, which the Board had been seeking to do for months at that point.

89. While the IHO found the District had failed to provide comparable services pursuant to a transfer IEP, failed to develop an IEP for J.C. that offered FAPE, and failed to ensure parental participation in an IEP meeting, the IHO awarded no tuition reimbursement, compensatory education, or other relief whatsoever to Parent.  In fact, the IHO stated in his Final Decision and Order, "In the end, I can't help but believe that we have arrived at roughly the same place that [the District] would have landed some time in the fall of 2021 had OOTB and [Parent] fully cooperated with [the District] – except, perhaps, that J.C. would have spent the bulk of the 2021-2022 school year in an educational placement other than OOTB that would have been funded by [the District]."

90. Defendants have represented they intend to appeal the IHO's decision and Defendants McGuire and Leader on behalf of Parent have already filed a lawsuit in this Court seeking not only a determination that Parent is the prevailing party entitled to attorneys' fees, but asserting new claims under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131.  See, Case No. 2:22-cv-02430.  Parent's 504 claim is based on alleged retaliation, but she has told the District she knows they did not retaliate against her.

91. Jessica Dawso, co-counsel for the Board, has been a licensed member of the Ohio bar since 2007 and has over 10 years of experience in the practice of education law.  Her hourly rate is $275.00 and she spent 318 hours defending Parent's Complaint through May 31, 2022.

92. Sandra McIntosh, co-counsel for the Board, has been a licensed member of the Ohio bar since 2004 and has approximately 15 years of experience in the practice of

16

education law.  Her hourly rate is $275.00 and she spent 408.9 hours defending Parent's Complaint through May 31, 2022.

93. The District also incurred $7,718.92 in expenses for legal research, copying/preparing hearing exhibits and in travel costs related to attending the hearing.

94. In addition to incurring legal fees and expenses in order to defend against the Parent's Complaint, Plaintiff incurred $49,633.87 in expenses related to court reporter and transcript fees, which were increased due to Defendants' refusal to attend the hearing in-person.  The District was also required to pay $27,093.61 for the IHO's time spent presiding over the Complaint.

## COUNT I

95. Plaintiff incorporates by reference the allegations contained in paragraphs 1-94.

96. The Board is the prevailing party with regard to the Parent's Complaint.

97. Parent's Complaint was frivolous, unreasonable, or without foundation.

98. Defendants continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation.

99. Parent's Complaint was presented for an improper purpose, which was to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

100. As a result of Defendants' conduct, the District incurred legal fees and expenses in order to defend against the Parent's Complaint, plus expenses related to court reporter and transcript fees and hearing officer fees.

101. As such, the Board is entitled to reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1415(i)(3)(B)(i)(II) and (III).

## RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

1. Find that Defendants brought a due process complaint that was frivolous, unreasonable and without foundation;

2. Find that Defendants continued to litigate the claims in their Complaint that were frivolous, unreasonable and without foundation;

3. Find that Defendants' complaint or subsequent cause of action was presented for an improper purpose, namely to harass, cause unnecessary delay, and needlessly increase the cost of litigation;

4. Declare Plaintiff to be the prevailing party in the administrative proceeding held on Parent's Complaint.

5. Award Plaintiff reasonable attorneys' fees and costs incurred in defending against Parent's Complaint;

6. Award Plaintiff the costs related to the court reporter, transcript, and hearing officer fees incurred by Plaintiff in the administrative proceedings;

7. Award Plaintiff's attorneys' fees and costs in maintaining this action to recover attorneys' fees and costs;

8. Order any other relief this Court deems appropriate.

Respectfully submitted,

/s/ Sandra R. McIntosh
Jessica L. Dawso (0082842)
Sandra R. McIntosh (0077278)
Scott Scriven LLP
250 E. Broad Street, Suite 900
Columbus, OH 43215-3742
(614) 222-8686; FAX (614) 222-8688
jdawso@scottscrivenlaw.com
sandra@scottscrivenlaw.com

G. Daniel Spahn (0006261)
Jefferson County ESC
2023 Sunset Blvd
Steubenville, Ohio 43952
740-283-3347
Dspahn@jcesc.org
*Attorneys for Relator Steubenville City School District Board of Education*